UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| COOPER (KUSHAN) TIRE CO. LTD. AND COOPER TIRE & RUBBER CO., and VOGUE TYRE & RUBBER CO., <br><br> Plaintiffs, <br><br> and <br><br> ITG VOMA CORP., <br><br> Plaintiff-Intervenor. <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br> Defendant-Intervenor. | CIT Consol. Court No. 20-cv-113 |

**PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S REPLY BRIEF**

Gregory Carroll Dorris
Troutman Pepper Hamilton Sanders LLP
2000 K Street, NW
Suite 600
Washington, DC 20006

(202) 220-1224
Fax: (202) 220-1665
Email: gregory.dorris@troutman.com

*Counsel for Plaintiffs Cooper (Kunshan) Tire Co., Ltd.
and Cooper Tire & Rubber Company*

Jordan Charles Kahn
Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP
1201 New York Avenue, NW.
Suite 650
Washington, DC 20005
(202) 783-6881
Fax: (202) 783-0405
Email: jkahn@gdlsk.com

*Counsel for Consolidated
Plaintiff Vogue Tyre & Rubber Co.*

Jonathan Thomas Stoel
Nicholas R. Sparks
Hogan Lovells US LLP
Columbia Square Building
555 Thirteenth Street, NW.
Washington, DC 20004
(202) 637-6634
Fax: (202) 637-5910
Email: jonathan.stoel@hoganlovells.com

*Counsel for Plaintiff-Intervenor ITG Voma Corporation*

Dated: April 29, 2021

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. THE APPLICATION OF AFA TO THE EBCP IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND IS OTHERWISE CONTRARY TO LAW ................................................. 3

   A. Use Of AFA Is Not Warranted As There Is No Fatal Gap In The Record ........................... 3

   B. The Record Evidence Shows That The Two Mandatory Respondents And Their Customers Did Not Use The EBCP ...................................................................................... 5

   C. Commerce Could Have Conducted Verification ............................................................... 10

III. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

*Page(s)*

**Statutes**
19 U.S.C. § 1677e(a).................................................................................................................3
**Regulations**
19 C.F.R. § 351.303(g)(1)(i)......................................................................................................6
**Federal Cases**
*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)..................................6
*Clearon Corp. v. United States*, 359 F. Supp. 3d 1344 (Ct. Int'l Trade 2019)..........................4
*Clearon Corp. v. United States*, 474 F. Supp. 3d 1339 (Ct. Int'l Trade 2020)................ 4-5, 10
*New Am. Keg v. United States*, No. 20-00008, slip op. 21-30 (Ct. Int'l Trade
    Mar. 23, 2021).....................................................................................................................11
*Yama Ribbons & Bows Co. v. United States*, 419 F. Supp. 3d 1341
    (Ct. Int'l Trade 2019).......................................................................................................8-9
**Federal Register Publications & Notices**
*Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and Parts
    Thereof From the People's Republic of China: Final Affirmative
    Countervailing Duty Determination*, 86 Fed. Reg. 14,071 (Mar. 12, 2021) ................. 9-10
*Countervailing Duty Order on Certain Passenger Vehicle and Light Truck Tires
    From the People's Republic of China: Final Results of Countervailing Duty
    Administrative Review; 2017*, 85 Fed. Reg. 22,718 (Apr. 23, 2020)............................2, 6, 12
**Other Authorities**
*April 15, 2020 Decision Memorandum for the Final Results of the Administrative
    Review of the Countervailing Duty Order on Certain Passenger Vehicle and
    Light Truck Tires from the People's Republic of China; 2017*....................................2, 4, 6, 10

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| COOPER (KUSHAN) TIRE CO. LTD. AND COOPER TIRE & RUBBER CO., <br><br> and <br><br> VOGUE TYRE & RUBBER CO., <br><br>    Plaintiffs, <br><br> and <br><br> ITG VOMA CORP., <br><br>    Plaintiff-Intervenor. <br><br> v. <br><br> THE UNITED STATES, <br><br>    Defendant, <br><br> and <br><br> THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br>    Defendant-Intervenor. | CIT Consol. Court No. 20-cv-113 |

**PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S REPLY BRIEF**

**I.   INTRODUCTION**

Plaintiffs Cooper (Kushan) Tire Co. LTD. ("CKT") and Cooper Tire & Rubber Co., Consolidated Plaintiff Vogue Tyre & Rubber Co. ('Vogue"), and Plaintiff-Intervenor ITG Voma Corp. ("ITG Voma") (collectively herein "Plaintiffs") submit this Reply Brief to support their

Rule 56.2 Motion for Judgment on the Agency Record filed on November 16, 2020, ECF 38, and reply to the response briefs of Defendant ("Def. Br.") and Defendant-Intervenor ("Def. Int. Br.") filed on March 15 and 30, 2021, ECF 44-45, respectively. In their Rule 56.2 motion and memorandum of law in support of their motion for judgment on the agency record ("Opening Brief"), Plaintiffs sought review of the final results of the U.S. Department of Commerce ("Commerce" or the "Department") in the administrative review of the countervailing duty ("CVD") order on certain passenger vehicle and light truck tires from the People's Republic of China ("China") (C–570–017), covering the period of review ("POR") spanning January 1, 2017 through December 31, 2017, published in the Federal Register as *Countervailing Duty Order on Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2017*, 85 Fed. Reg. 22,718 (Apr. 23, 2020) ("*Final Results*") (**PR 387**), and the April 15, 2020 *Decision Memorandum for the Final Results of the Administrative Review of the Countervailing Duty Order on Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China; 2017*, referenced in the published Final Results at Appendix I as the "Issues and Decision Memorandum" (*see* 85 Fed. Reg. at 22,720 (Apr. 23, 2020) ("IDM") (**PR 383**).[1]

Specifically, Plaintiffs contest Commerce's determination to apply adverse facts available ("AFA") to the use of the Export Buyer's Credit Program ("EBCP") when: (1) there is no gap in the record evidence to warrant use of AFA; (2) there is substantial evidence on the record establishing that neither the two mandatory respondents nor their U.S. customers used this program; and (3) there is no evidence on the record that non-use could not have been verified at

---

[1] Citations to documents on the administrative record are denoted by "**PR**" for public documents and "**CR**" for confidential documents, followed by the document number assigned in the "Index to Administrative Record." This brief does not contain any confidential information.

either the China Export Import Bank ("China EX-IM Bank") or through respondents' U.S. customers. The Court here should continue to follow deeply established precedent in prior U.S. Court of International Trade ("CIT") decisions, and once again reject the Government's claims concerning the EBCP. In sum, the Court should find that Commerce's application of AFA to the EBCP is unsupported by substantial evidence, and is otherwise contrary to law.

## II. THE APPLICATION OF AFA TO THE EBCP IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND IS OTHERWISE CONTRARY TO LAW

Defendant and Defendant-Intervenor advance similar claims in response to Plaintiffs' Opening Brief. Distilled to their essence, these claims amount to naked assertions (without factual support) that: (1) the Government of China ("GOC") created a fatal gap in the underlying agency record that demands use of AFA regarding the EBCP; (2) there is insufficient record evidence of non-use of the program; and (3) verification by Commerce is impossible and irrelevant. Aside from being factually incorrect, these claims are fundamentally erroneous and contrary to law in that they reverse the burden of proof. Commerce has failed to prove that there is a gap in the information provided by the GOC that undermines a finding of non-use of the EBCP, or otherwise warrants use of AFA as authorized by statute. 19 U.S.C. § 1677e(a). Moreover, Commerce has failed to point to any record evidence of use of the EBCP by either the two mandatory respondents or their customers during the POR. If Commerce doubted the information on record of EBCP non-use, it could have conducted verification. Accordingly, this Court should remand to Commerce to recalculate the CVD rates of the respondents, with specific instructions that Commerce may not apply AFA in assessing any rate for the EBCP.

### A. USE OF AFA IS NOT WARRANTED AS THERE IS NO FATAL GAP IN THE RECORD

Both Defendant and Defendant-Intervenor claim that the GOC failed to fully cooperate to

the best of its ability by not answering certain questions on the operation of the EBCP. This alleged gap in the administrative record supposedly prevented Commerce from understanding how the EBCP operates such that application of AFA was its only option. Defendant further claims that "only" the GOC could provide this missing information. Def. Br. at 15 (quoting IDM at 20 (**PR 383**)).

As detailed in Plaintiffs' Opening Brief, the Court has found in myriad previous cases that the information alleged to be missing by Commerce is not essential to establishing use of the EBCP. *See, e.g.*, *Clearon Corp. v. United States*, 359 F. Supp. 3d 1344, 1360 (Ct. Int'l Trade 2019) ("*Clearon I*") ("While Commerce is, no doubt, curious as to all of the inner workings of many Chinese programs, mere curiosity is not enough. Commerce must either provide an adequate answer as to why the information it seeks 'to fully understand the operation of the program' is necessary to fill a gap as to {mandatory respondent} Heze's products and their sale, or rely on the information it has on the record."). Following remand to Commerce, the Court in further explained that the alleged missing information does not warrant Commerce's application of AFA:

> Although Commerce, in the Remand Results, takes the court through why it wanted this information, as has been found in other cases in this Court, ***it is not clear that any of the missing information was "necessary" to Commerce's central statutory inquiry, i.e., to determine whether the Export Buyer's Credit Program provided a benefit to Heze***. Thus, it appears that, as in Guizhou Tyre, "the Department has assumed the conclusion—that a gap in the record exists as a result of {China's} failure to cooperate—without addressing what 'constitutes a "gap" in the record,' and by pointedly closing its eyes on the evidence provided by {Heze} that would 'fairly detract{}' from its ultimate conclusion." *Guizhou Tyre*, 43 CIT at ——, 415 F. Supp. 3d at 1342 (internal citations omitted). "***The law does not permit Commerce to circumvent the statutory requirements of the {countervailable duty} statute just because a respondent fails to cooperate; nor is Commerce 'relieve{d} {} from relying on some facts to make the requisite determinations to satisfy the elements of 19 U.S.C. § 1677(5).'***" *Id*. (citation omitted).

*Clearon Corp. v. United States*, 474 F. Supp. 3d 1339, 1353-54 (Ct. Int'l Trade 2020) ("*Clearon II*") (emphases added). The holdings of the Court referenced in *Clearon II* all confirm that the information that Commerce has claimed to be necessary, and whose "gap" allegedly justifies application of AFA, is not required to determine use of the EBCP. These holdings thus make clear that Commerce's resort to AFA in the underlying administrative review is unsupported by substantial evidence, and is otherwise contrary to law.

### B. THE RECORD EVIDENCE SHOWS THAT THE TWO MANDATORY RESPONDENTS AND THEIR CUSTOMERS DID NOT USE THE EBCP

As detailed in Plaintiffs' Opening Brief, the only record evidence is that the two mandatory respondents CKT and Shandong Longyue Rubber Co. Ltd. ("Longyue"), and their customers did not use the EBCP. This evidence includes the certified responses of CKT and Longyue that: (1) neither the mandatory respondents, nor any of their customers, used the EBCP; and (2) they did not assist their customers in any way to obtain any export buyer's credits under the EBCP. *See* CKT Initial Questionnaire Response, at pp. III-31 to III-32 (**CR 30**; **PR 88**); Longyue Initial Questionnaire Response, at pp. 24-26 (**CR 46**; **PR 97**). Longyue specifically provided correspondence from its customers confirming that they did not use the EBCP. Longyue Initial Questionnaire Response, Exhibit 24 (**CR 46**; **PR 97**). The evidence also includes the GOC's repeated corroboration that neither CKT nor Longyue, nor any of their customers, used the EBCP. *See* GOC Initial Questionnaire Response, at pp.128-132 (**CR 9**; **PR 73**); *see also* GOC Supplemental Response, at pp. 6-13 (**PR 135**).

There is no record evidence that contradicts this demonstrative evidence of non-use (*i.e.*, showing actual use of the EBCP by CKT, Longyue, or any of their customers during the POR). Indeed, there has never been any evidence presented by either a petitioner or respondent in any CVD case against China that any U.S. company is actually using, or has ever used, the EBCP

(the only allegations that have been made are that a U.S. company could use this program).

Defendant claims this Court may not rely on this record evidence, questioning whether "Commerce should have simply trusted plaintiffs' and the Chinese government's representations." Def. Br. at 20. But these factual statements by Plaintiffs and the GOC were not mere representations. These statements were made truthfully, and supported by signed factual certifications of their accuracy per Department regulations. 19 C.F.R. § 351.303(g)(1)(i). The statements also are fully consistent with the uncontested record evidence as to the operation of the EBCP. That is, the record demonstrates that a respondent would have to be contacted and made aware of any application by one of its customers, and assist that customer through an application and obtaining insurance, for that customer to use the EBCP. GOC Initial Questionnaire Response, at pp. 130-132 and Exhibits F-1 to F-3 (**CR 9, 29; PR 73, 87**).

Defendant tries to make much of the fact that the two mandatory respondents did not place on the record affidavits or declarations from their customers as to non-use. Def. Br. at 16-19. As an initial matter, Commerce's position may not be sustained by this Court because it impermissibly constitutes "post hoc rationalizations for agency action." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). Commerce did not find in the *Final Results* that "the absence of non-use affidavits or declarations was particularly relevant to Commerce's application of {AFA} to find that respondents used the {EBCP}," as Defendant now contends. Def. Br. at 19; *see* IDM at Cmt. 3 (**PR 383**). This is not only an impermissible, post hoc rationalization, but Commerce's newfound justification contradicts Commerce's stated rationale in the *Final Results* that AFA was necessary because "the GOC withheld information that was requested, and significantly impeded the proceeding." IDM at Cmt. 3 (**PR 383**). In other words, following a finding by Commerce that no amount of evidence could be sufficient to

overcome GOC non-cooperation, Defendant is now disingenuously pleading to this Court that the evidentiary record supports its erroneous application of AFA.

In any event, Defendant is also wrong to emphasize the allegedly deficient evidence of non-use of the EBCP. First, there was no need for any additional record evidence. The mandatory respondents' statements as to non-use are clear, unequivocal, consistent with other record evidence, and accompanied by the required factual certifications of truthfulness and accuracy. There is simply no record evidence that contradicts this record evidence of non-use of the EBCP.

Second, Defendant's argument in its brief is internally inconsistent. At page 15, Defendant emphatically argues that only the GOC could provide the information to determine usage of the EBCP. Def. Br. at 15. Yet, Defendant at page 19 claims that CKT's and Longyue's evidence is deficient as to non-use, because they did not provide customer affidavits and declarations. Defendant cannot have it both ways, claiming that only the GOC has the necessary information but also that the customer affidavits and declarations are essential to avoid a "gap" of information. Indeed, it is unclear how any respondent is to act in response to the government's inconsistent position; if only the GOC can provide the information that Commerce requires, and Commerce will not accept any other proof, then it would make little sense for a respondent go to the effort and cost of obtaining affidavits and declarations.

Third, Defendant is disingenuous in implying that the only situations in which the use of AFA for the EBCP has been rejected by the Courts is where there were respondent affidavits and declarations of non-use. Defendant even waffles on its own implication, saying equivocally that the Court's decisions have "overwhelmingly" — *i.e.*, not always — remanded only where there were non-use affidavits or declarations on record, and that "all or nearly all" cases on which

Plaintiffs rely are distinguishable because of the lack of affidavits or declarations on record here. Def. Br. at 6, 16. In fact, Defendant is wrong to claim that the extensive CIT precedent "hing{es} almost entirely on non-use affidavits and declarations." *Id.* at 19.

*Yama Ribbons & Bows Co. v. United States*, 419 F. Supp. 3d 1341 (Ct. Int'l Trade 2019), for example, invalidated Commerce's EBCP determination in the absence of any signed affidavits or declarations of non-use. Much of the evidence in *Yama Ribbons* was the same as here, including confirmation that the mandatory respondent Yama Ribbons & Bows Co. ("Yama") did not use the EBCP or assist its customers to use the EBCP and that the GOC established with China EX-IM Bank that neither Yama nor its customers used the EBCP. The only factual difference in *Yama Ribbons* is that Yama claimed to have called its customers and confirmed non-use of the EBCP, but there were no customer affidavits or declarations of non-use. The Court in *Yama Ribbons* expressly rejected any requirement for customer certifications of non-use:

> Defendant-intervenor argues that Yama should have obtained certifications of non-use from each of its customers, . . . but **the absence of such certifications is not a justification allowing Commerce to ignore the record evidence that existed**. There is no basis in the record upon which it reasonably could be presumed or speculated—as Commerce apparently did—that a Yama customer could have obtained or participated in a loan under the Export Buyer's Credit Program about which both (1) the EX-IM Bank had no record and (2) Yama and the customer itself were unaware.

419 F. Supp. 3d at 1355 (citation omitted) (emphasis added).

The Court in *Yama Ribbons* detailed all the factual information of non-use of the EBCP and contrast it with no evidence at all of actual use of the EBCP. Without relying solely on Yama's phone calls to its customers, the Court concluded in *Yama Ribbons* as follows:

-8-

> Commerce erred in promising, and then failing, to allow Yama a meaningful opportunity to demonstrate that it did not benefit from the EBCP. **It erred, specifically, when it ignored the considerable evidence Yama and the government of China provided indicating that Yama had not in fact benefitted from the program and when it overlooked that there was a complete lack of evidence that Yama had obtained a benefit**. Commerce also erred in finding that, due to the failure of the Chinese government to respond to three identified categories of information requests, the record information did not allow Commerce to determine whether Yama benefitted from the program. That finding lacked the support of substantial evidence on the record of the review. Accordingly, **the record did not contain evidence sufficient to support the Department's determination to impute to Yama a benefit from the EBCP using facts otherwise available or an adverse interference**. On remand, Commerce now must make the "benefit" determination the statute required it to make as to the EBCP, it must do so without resort to facts otherwise available or an adverse inference, and it must redetermine Yama's overall subsidy rate in accordance with that finding.

*Id.* at 1356 (emphases added).

The point is that while the existence of the non-use affidavits or declarations may have buttressed the Court's decisions in some of the cases, no decision has been based solely on this type of record evidence alone. Like in the CIT decisions cited by Plaintiffs, the evidence on the record here is that the two mandatory respondents and their customers did not use the EBCP. Commerce can point to no evidence at all on the record that the two mandatory respondents or their customers used the EBCP. Any absence of non-use affidavits or declarations (or customer phone calls) does not undermine or contradict the record evidence of non-use of the EBCP by CKT, Longyue, or any of their customers during the POR.

In a recent determination, Commerce laid bare its position that applying AFA to countervail the EBCP is necessary to punish GOC non-cooperation — rather than based on any evidentiary standard being unsatisfied:

> . . . the GOC is reticent to share any official information about its export credit programs. In numerous CVD proceedings before Commerce, the GOC has refused to provide adequate information relevant to understanding the EBCP, demonstrating **a purposeful and coordinated**

> **effort to withhold information in an attempt to prevent Commerce from ever fully comprehending the true details of the program**. This treatment of the EBCP as a "black box" continues to inhibit Commerce's ability to evaluate claims of non-use and any attempts to verify company information.

*Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and Parts Thereof From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 14,071 (Mar. 12, 2021), IDM Cmt. 2 (emphasis added). This administrative confession provides all the more reason why the Court should not accept Defendant's post hoc assertion that Commerce countervailed the EBCP based on insufficient evidence of non-use.

Finally, the Court should not sanction Defendant's attempt to evade the extensive CIT precedent invalidating Commerce's use of AFA to countervail EBCP. Def. Br. at 16. While decisions of one Judge of the Court are not binding on others, the Court recently "note{d} that, despite Commerce's respectful protest, the United States elected not to file an appeal in any of the aforementioned cases." *Clearon II*, 474 F. Supp. 3d at 1353 n.13.

### C. COMMERCE COULD HAVE CONDUCTED VERIFICATION

As detailed above and in their Opening Brief, Plaintiffs have demonstrated that there is more than ample evidence supporting non-use of the EBCP by the two mandatory respondents or their customers, and there is no evidence at all to the contrary. In addition to the substantial evidence of non-use, there is also no evidence or basis in the record demonstrating that this non-use could not be verified.

Defendant claims that Commerce has the sole purview to decide when and how to conduct verification, suggesting that if Commerce says it will not and cannot conduct verification, then that is that. Def. Br. at 19-20. But, Defendant is the one suggesting that Commerce is unable to trust the representations of the mandatory respondents and the GOC, notwithstanding: (1) the signed certifications as to the truthfulness and completeness of the

-10-

submitted responses to the questionnaires; and (2) Commerce's recognition that the information is subject to verification. Commerce may not simply claim mistrust and refuse to accept certified factual information on the record, especially where the record is bereft of conflicting factual information between non-use and use of the EBCP. Indeed, Plaintiffs' request for verification is the antithesis of Defendant's characterization "that Commerce should have simply trusted plaintiffs' and the Chinese government's representations." Def. Br. at 20. If Commerce has a basis not to believe or accept certified record evidence, then it has an easy recourse, *i.e.*, the ability to verify that information. As the Court recently explained: "Commerce should—to borrow an expression from President Reagan—trust but verify." *New Am. Keg v. United States*, No. 20-00008, slip op. 21-30 (Ct. Int'l Trade Mar. 23, 2021), at 41.

Commerce's assertion that it is unable to verify the information provided on the underlying record is simply untrue. As discussed above and in Plaintiffs' Opening Brief, Commerce has a variety of methods at its disposal that it has used many times in the past to verify the existence or non-existence of factual information. *See* ECF 38-1, at Sec. I.C.3. Nothing on the record establishes that non-use could not have been, or would have been difficult to be, verified through a review of China EX-IM Bank's records. Commerce never inquired whether these records include export buyer's credits issued through partner or correspondent banks, and there is no reason to believe it does not. The type of, and basis for, every loan on the books and records of the mandatory respondents and their customers could have been determined and then verified through a review of underlying loan documents. Even in the absence of affidavits or declarations, Commerce could have selected and visited one or two U.S. customers of each mandatory respondent as a sample to verify non-use. Such sampling is a common means of verification, and is not an onerous action for Commerce, which has routinely conducted this

type of verification in the past. Defendant-Intervenor (like Commerce) implies that verification here would be a "massive fishing expedition," attempting to place the burden of proving a negative (non-use of the EBCP) improperly on the shoulders of the GOC and the mandatory respondents. Def. Int. Br. at 5.

In sum, the burden of proof is on Commerce to show actual use of the EBCP by the mandatory respondents or their customers. There is no record evidence of any such use, and Commerce *elected* not to verify any of the reported information of non-use. As such, the Court should find that any determination of use of the EBCP based on an unfounded resort to AFA is unsupported by substantial evidence, and is otherwise not in accordance with law.

## III.   CONCLUSION

For the reasons discussed above, Plaintiffs and Plaintiff-Intervenor respectfully request that this Court hold that Commerce's *Final Results* are unsupported by substantial evidence and are otherwise not in accordance with law, and remand the *Final Results* with instructions to issue a new determination that is consistent with the Court's decision.[2]

                                               Respectfully submitted,

                                               */s/ Gregory C. Dorris*
                                               Gregory Carroll Dorris
                                               Troutman Pepper Hamilton Sanders LLP
                                               2000 K Street, NW
                                               Suite 600
                                               Washington, DC 20006
                                               (202) 220-1224
                                               Fax: (202) 220-1665
                                               Email: gregory.dorris@troutman.com

                                               *Counsel for Plaintiffs Cooper (Kunshan) Tire Co., Ltd.*
                                               *and Cooper Tire & Rubber Company*

---

[2] Plaintiffs CKT and Cooper Tire & Rubber Co. are not pursuing Count II of their Complaint, other than to the extent the Court deems Count II necessary to support any part of their argument challenging Commerce's application of AFA to the EBCP.

April 29, 2021

/s/ *Jordan C. Kahn*
Jordan Charles Kahn
Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP
1201 New York Avenue, NW.
Suite 650
Washington, DC 20005
(202) 783-6881
Fax: (202) 783-0405
Email: jkahn@gdlsk.com

*Counsel for Consolidated Plaintiff
Vogue Tyre & Rubber Co.*

April 29, 2021

/s/ *Jonathan T. Stoel*
Jonathan Thomas Stoel
Nicholas R. Sparks
Hogan Lovells US LLP
Columbia Square Building
555 Thirteenth Street, NW.
Washington, DC 20004
(202) 637-6634
Fax: (202) 637-5910
Email: jonathan.stoel@hoganlovells.com

*Counsel for Plaintiff-Intervenor ITG Voma Corporation*

April 29, 2021

## CERTIFICATE OF COMPLIANCE

Pursuant to Standard Chambers Procedures, ¶ 2(B)(2), the undersigned hereby certifies that the above Plaintiffs' and Plaintiff-Intervenor's Reply Brief complies with the Court's word limitation, and that the number of words in the brief is 3,663 (based on the word count of the word-processing system used to prepare this brief).

/s/ *Gregory C. Dorris*
Gregory Carroll Dorris
Troutman Pepper Hamilton Sanders LLP