Slip Op. 21-141

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **COOPER (KUNSHAN) TIRE CO., LTD. AND COOPER TIRE & RUBBER CO.**, | |
| Plaintiffs, | |
| **ITG VOMA CORP.**, | |
| Plaintiff-Intervenor, | |
| and | |
| **VOGUE TYRE & RUBBER CO.**, | |
| Consolidated-Plaintiff, | **Before: Timothy M. Reif, Judge** |
| v. | **Consol. Court No. 20-00113** |
| **UNITED STATES**, | |
| Defendant, | |
| and | |
| **THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL & SERVICE WORKERS INT'L UNION, AFL-CIO, CLC**, | |
| Defendant-Intervenor. | |

## OPINION AND ORDER

[Remanding the Final Determination to Commerce.]

Dated: <u>October 12, 2021</u>

<u>Gregory C. Dorris</u>, Troutman Pepper Hamilton Sanders LLP, of Washington, D.C., argued for plaintiffs Cooper (Kunshan) Tire Company, Ltd. and Cooper Tire & Rubber Company.

Consol. Court No. 20-00113                                              Page 2

Andrew T. Schutz, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Washington, D.C., argued for consolidated-plaintiff Vogue Tyre & Rubber Company. On the brief was Jordan C. Kahn.

Nicholas R. Sparks, Hogan Lovells US LLP, of Washington, D.C., argued for plaintiff-intervenor ITG Voma Corporation.  With him on the brief was Jonathan T. Stoel.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant United States.  With her on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel on the brief was Natalie M. Zink, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Roger B. Schagrin, Schagrin Associates, of Washington, D.C., argued for defendant-intervenor the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC.  With him on the brief were Geert De Prest and Nicholas J. Birch.


        Reif, Judge: This action involves the final determination of the U.S. Department of Commerce ("Commerce") in the administrative review of the countervailing duty ("CVD") order on certain passenger vehicle and light truck tires from the People's Republic of China for the period of review ("POR") January 1, 2017, through December 31, 2017.  *See Countervailing Duty Order on Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2017* ("Final Determination"), 85 Fed. Reg. 22,718 (Dep't of Commerce Apr. 23, 2020) (final determination) and accompanying Issues and Decision Memorandum (Apr. 15, 2020) ("IDM").  Before the court is a United States Court of International Trade ("USCIT") Rule 56.2 motion for judgment on the agency record filed by plaintiffs Cooper (Kunshan) Tire Co., Ltd. ("Cooper Tire") and Cooper Tire & Rubber

Co.  Plaintiffs argue that the determination by Commerce that, based on the application of adverse facts available ("AFA"), Cooper Tire and Shandong Longyue Rubber Co., Ltd. ("Longyue") used and benefited from the Export Buyer's Credit Program ("EBCP"), is not supported by substantial evidence.  Mem. of Law in Supp. of Pls.' and Pl.-Intervenor's Mot. for J. on Agency R. ("Pls. Br.") at 3-4, ECF No. 38.  This court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018), and 28 U.S.C. § 1581(c) (2018).[1]  The court remands the Final Determination to Commerce to take the actions as set forth *infra*, Section I.B.3.

## BACKGROUND

Commerce initiated the administrative review on October 4, 2018, and selected two Chinese tire producers, Cooper Tire, subsidiary of Cooper Tire & Rubber Co., and Longyue, as mandatory respondents.  Resp't Selection Mem. (Feb. 8, 2019), CR 4, PR 49.[2]

Plaintiffs Cooper Tire, Cooper Tire & Rubber Co., Vogue Tyre & Rubber Co. and plaintiff-intervenor ITG Voma Corp. (collectively "plaintiffs") now challenge Commerce's finding that, based on AFA, the mandatory respondents used and benefited from the

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition.

[2] Longyue is not a party to the current case.  Plaintiff Vogue Tyre & Rubber Co. and plaintiff-intervenor ITG Voma Corp. were companies in the administrative review that requested review but were not selected as mandatory respondents by Commerce.  Resp't Selection Mem. (Feb. 8, 2019), CR 4, PR 49; *see also* Pls. Br. at 8.

EBCP.  The EBCP, which is administered by the Export-Import Bank of the People's

Republic of China ("China Export-Import Bank"), "provides loans at preferential rates for

the purchase of exported goods from China."  *Certain Passenger Vehicle and Light*

*Truck Tires From the People's Republic of China: Countervailing Duty Administrative*

*Review, Correction of Notification of Rescission, in Part, 2017* ("Preliminary

Determination"), 84 Fed. Reg. 58,685 (Dep't of Commerce Nov. 1, 2019) (preliminary

determination) and accompanying Preliminary Decision Memorandum (Oct. 10, 2019)

("PDM") at 25.

On March 1, 2019, Commerce issued its initial questionnaire for the

administrative review to both the GOC and the respondent companies.  Commerce

asked several questions regarding whether the respondent companies and their

respective customers had applied for or used the EBCP.  Specifically, the questionnaire

requested: (1) a list of the U.S. customers to whom the respondents exported during the

POR; (2) information on the application process for the EBCP; and (3) details on the

type and extent of assistance provided by the EBCP to each customer.  *See generally*

Initial Questionnaire (Mar. 1, 2019), PR 52.  If, in response to the questionnaire, the

GOC or the respondent companies asserted non-use of the program, Commerce in the

questionnaire asked that the GOC and the mandatory respondents detail the steps that

each took to determine that no U.S customers used the EBCP.  *Id.*

On April 18, 2019, the GOC and the mandatory respondents submitted their

initial questionnaire responses.  GOC Initial Questionnaire Resp. (Apr. 18, 2019), CR 9-

29, PR 73-87; Cooper Tire Questionnaire Resp. (Apr. 18, 2019), CR 30-45, PR 88-96;

Longyue Questionnaire Resp. (Apr. 18, 2019), CR 46-77, PR 97-98.  The GOC, Cooper

Tire and Longyue all stated in their responses that neither the respondent companies

nor their customers had used or benefited from the EBCP during the POR.  *See* GOC

Initial Questionnaire Resp. at 129; Cooper Tire Questionnaire Resp. at III-31-III-32;

Longyue Questionnaire Resp. at 25-26.

      Specifically, Cooper Tire stated in its questionnaire response that it "did not apply

for, use, or benefit from [the EBCP] during the POR, and did not have any outstanding

financing under this program."  Cooper Tire Questionnaire Resp. at III-32.  In response

to Commerce's request that Cooper Tire discuss the role it played in assisting

customers to obtain buyer credits and to provide documentation, Cooper Tire

responded that it

> [was] not aware that any of its customers applied for, used or benefited
> from this alleged program during the POR, and [Cooper Tire] did not
> provide any assistance to its customers for receiving the export buyer's
> credit.  [Cooper Tire] did not perform any acts that in any way would
> permit these customers to receive any export buyer credits on its sales to
> these customers.

*Id*.

      In response to Commerce's request that Cooper Tire "explain in detail the steps

you took to determine that no customer used the Buyer Credit Facility," Cooper Tire

responded that it "was never contacted by any of its customers to provide any

information required to obtain an export buyer's credit from any Buyer Credit Facility.

Accordingly, [Cooper Tire] believes that it is impossible that any of its customers could

Consol. Court No. 20-00113                                                              Page 6

have possibly received export buyer's credit."  *Id*.  To support its claims of non-use,

Cooper Tire provided Commerce with a list of its customers.  *Id*., Ex. 18, CR 36, PR 89.

        The GOC, in response to Commerce's request for details on the type and extent

of assistance provided to each U.S. customer, said that the request was "not applicable"

because none of the respondent companies' customers had used the program during

the POR.  GOC Initial Questionnaire Resp. at 129.  The GOC, to bolster its claims of

non-use, maintained that it had conducted a search of the China Export-Import Bank

system and found that the EBCP was not used by the respondents or any of the

respondent companies' U.S. customers.  *Id.* at 129-130.  The GOC provided

screenshots of the search queries purported to be from the China Export-Import Bank

system.  *Id*., Ex. F.1, CR 29, PR 87.  In addition, the GOC specified that these

screenshots would have shown any record of U.S customer use of the EBCP,

irrespective of the customer's underlying contract value.  *Id.* at 129-130.  The GOC

claimed further that the screenshots demonstrated that "no disbursement was made

through a correspondent or partner bank."  *Id.* at 130.

        On June 24, 2019, Commerce issued a supplemental questionnaire to the GOC.

GOC Suppl. Questionnaire (June 24, 2019), PR 129.  In the questionnaire, Commerce

requested that the GOC provide (1) any documents pertaining to the alleged 2013

EBCP revisions, including those related to the potential elimination of the USD 2 million

threshold loan requirement, and (2) a list of partner/correspondent banks involved in the

administration of the EBCP.  *Id.* at 2-3.[3]  In requesting information on the threshold

requirement, Commerce explained that the record indicated that the administrative

measures related to the EBCP were revised in 2013.  *Id.* at 2; *see also* IDM at 18.

Specifically, Commerce outlined that record information suggesting that the 2013

revisions eliminated the USD 2 million threshold requirement.  GOC Suppl.

Questionnaire at 2; *see also* IDM at 17.  In addition, Commerce noted that it was

requesting the list of partner/correspondent banks because of record information

indicating that EBCP credits could be distributed directly through those

partner/correspondent banks.  GOC Suppl. Questionnaire at 2-3; *see also* IDM at 19.

On July 8, 2019, the GOC responded to Commerce's supplemental

questionnaire.  Pls. Br. at 7; GOC Suppl. Questionnaire Resp. (July 8, 2019) ("SQR"),

PR 135-136.  However, the GOC declined still to provide information on the 2013

revisions, stating that the guidelines were "internal to the bank, not public, and not

available for release."  SQR at 9.  Instead, the GOC provided a copy of the *2000

Administrative Measures of Export Buyer's Credit of Ex-Im Bank* ("2000 Administrative

Measures"), which had also been attached to the GOC's Initial Questionnaire response

on April 18, 2019.  SQR at 8; GOC Initial Questionnaire Resp. at 130, Ex. F.2, CR 29,

PR 87.  The GOC asserted that the 2000 Administrative Measures "continue to be valid

and in force," despite the conflicting record information.  SQR at 8.  In addition, the GOC

stated that it could not provide information related to the partner/correspondent banks

---

[3] Pages cited to the GOC Supplemental Questionnaire refer to pages of the attached
questionnaire within PR 129.

because it lacked the "authority or right to force the [China Export-Import] Bank to reveal details of other transactions . . . ."  *Id.* at 13.

On October 10, 2019, Commerce determined preliminarily that based on AFA Cooper Tire and Longyue used and benefited from the EBCP.  PDM at 22.  Commerce explained that the application of AFA was warranted because "the GOC [had] not cooperated to the best of its ability in response to Commerce's specific information requests."  *Id.*  Commerce determined that the GOC, "by virtue of its withholding information that was within its control, significantly impeded this proceeding, and failed to cooperate by not acting to the best of its ability."  *Id.*

On April 15, 2020, Commerce reaffirmed and rearticulated its finding from the PDM that based on AFA Cooper Tire and Longyue used and benefited from the EBCP.  *See* IDM at 19 ("[W]e find that the GOC, by virtue of its withholding of information and significantly impeding this proceeding, failed to cooperate by not acting to the best of its ability.  Accordingly, the application of AFA is warranted.").  Commerce found that the GOC did not respond fully to Commerce's questionnaires.  Specifically, Commerce stated that "the GOC refused to provide [the documents pertaining to the 2013 revisions]," and that "the GOC also refused to provide a list of all partner/correspondent banks involved in the disbursement of [EBCP] credits."  *Id.* at 18-19.

Commerce explained that without the requested information on the 2013 revisions, including information on the USD 2 million threshold loan requirement and the involvement of partner/correspondent banks, Commerce was unable to verify claims of non-use.  *Id.*  As a result, Commerce found "that the mandatory respondents received

countervailable subsidies during the POR."  *Id.* at 1.  Commerce determined further that

it "did not change the AFA methodology for this program," and that "[t]he rate for both

Cooper [Tire] and Longyue is 4.99 percent *ad valorem*."  *Id.* at 7.  "For the companies

for which a review was requested, but which were not selected for individual

examination, [Commerce used] the mandatory respondents' CVD rates to determine the

applicable rate."  *Id.* at 1.

## STANDARD OF REVIEW

The court exercises jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28

U.S.C. § 1581(c).  The court must sustain Commerce's CVD determination unless it is

"unsupported by substantial evidence on the record, or [is] otherwise not in accordance

with law."  19 U.S.C. § 1516a(b)(1).  Substantial evidence requires "more than a mere

scintilla" of evidence to support the underlying conclusions.  *Consol. Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938).  However, when a statute grants an agency power to

administer fact-intensive inquires, the agency's conclusion should be reversed only if

the record is "so compelling that no reasonable factfinder" could reach the same

conclusion.  *INS v. Elias-Zacarias*, 502 U.S. 478, 484 (1992).

The court must review the record in its entirety, "including whatever fairly detracts

from the substantiality of the evidence."  *Atlantic Sugar, Ltd. v. United States*, 744 F.2d

1556, 1562 (Fed. Cir. 1984).  Still, "the possibility of drawing two inconsistent

conclusions from the [record] does not prevent an administrative agency's finding from

being supported by substantial evidence."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607,

620 (1966) (citations omitted).  Under the substantial evidence standard, the court

should uphold the agency determination as long as "its factual findings are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusion." *Shandong Huarong Gen. Corp. v. United States*, 25 CIT 834, 837, 159 F. Supp. 2d 714, 718 (2001) (citations omitted), *aff'd sub nom. Shandong Huarong Gen. Grp. Corp. v. United States*, 60 F. App'x 797 (Fed. Cir. 2003).

## LEGAL FRAMEWORK

Commerce shall impose a countervailable duty if: (1) Commerce determines that the government or public entity of a foreign country is "providing, directly or indirectly, a countervailable subsidy with respect to the manufacture, production, or export of a class or kind of merchandise imported, or sold (or likely to be sold) for importation, into the United States"; and (2) the U.S. International Trade Commission determines that "an industry in the United States is materially injured, or is threatened with material injury, or the establishment of an industry in the United States is materially retarded, by reason of [subject] imports."  19 U.S.C. § 1671(a).  Commerce will find a subsidy countervailable when a foreign government or public entity provides a financial contribution to a specific industry, thereby conferring a benefit.  19 U.S.C. § 1677(5).  "The Federal Circuit found that in order to conclude a person received a subsidy, 19 U.S.C. § 1677(5)(B) clearly requires Commerce to 'determine that a government provided that person with both a financial contribution . . . and a benefit.'" *Acciai Speciali Terni S.P.A. v. United States*, 26 CIT 567, 570, 206 F. Supp. 2d 1344, 1349 (2002) (emphasis omitted) (quoting *Delverde, SrL v. United States*, 202 F.3d 1360, 1365 (Fed. Cir. 2000)).

## DISCUSSION

**I.     Count I: Whether Commerce's application of adverse facts available to determine that Cooper Tire used the Export Buyer's Credit Program was reasonable and in accordance with law**

The court remands the Final Determination to Commerce to take the actions as set forth *infra*, Section I.B.3.

### A.     Legal framework

During a CVD investigation, Commerce requires information from both the foreign government alleged to have provided a subsidy and the respondent companies alleged to have received the subsidy.  *See Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1369-1370 (Fed. Cir. 2014*); see also Essar Steel Ltd. v. United States*, 34 CIT 1057, 1070, 721 F. Supp. 2d 1285, 1296 (2010), *rev'd on other grounds by* 678 F.3d 1268 (Fed. Cir. 2012).  The information submitted by the parties during the investigation is subject to verification by Commerce.  19 U.S.C. § 1677m(i)(1).  The purpose of verification is "to verify the accuracy and completeness of submitted factual information . . . .  As part of the verification, [Commerce] will request access to all files, records, and personnel which [Commerce] considers relevant to factual information submitted [on]: (1) [p]roducers, exporters, or importers; . . . or (4) [t]he government of the affected country."  19 C.F.R. § 351.307(d).

If necessary information is not available on the record or if a responding party (1) withholds information requested by Commerce, (2) fails to provide information in the form and manner requested by the established deadline, (3) significantly impedes a proceeding, or (4) provides unverifiable information, Commerce shall "use the facts

otherwise available in reaching the applicable determination."  19 U.S.C § 1677e(a).

Commerce is also required to "provide, when practicable, an opportunity to the party

submitting the information to explain or correct the deficiency [and to] determine

whether such explanation or correction is either unsatisfactory or untimely."  *Foshan*

*Shunde Yongjian Housewares & Hardware Co. v. United States*, 35 CIT 1398, 1402

(2011); *see also* 19 U.S.C. § 1677m(d).

In reaching a determination under 19 U.S.C. § 1677e(a), Commerce "may use an

inference that is adverse to the interests of that party in selecting from among the facts

otherwise available" only if Commerce "finds that an interested party has failed to

cooperate by not acting to the best of its ability to comply with a request for information."

19 U.S.C § 1677e(b).

This court has previously concluded that the GOC failed to cooperate when it did

not comply with a request for access involving the EBCP.  *RZBC Grp. Shareholding Co.*

*v. United States*, Slip Op. 16-64, 2016 WL 3880773, at *4 (CIT June 30, 2016)

("Commerce was [] justified in concluding that the GOC had not behaved to the best of

its ability, both in refusing to provide sample contracts and documentation [regarding

disbursement] and in denying access to the [China Export-Import] Bank's database.").

When a foreign government fails to cooperate to the best of its ability, Commerce's

application of AFA to the non-cooperating government's interests may collaterally affect

a cooperating respondent company.  *See Fine Furniture*, 748 F.3d at 1373 ("Although it

is unfortunate that cooperating respondents may be subject to collateral effects due to

the adverse inferences applied when a government fails to respond to Commerce's

questions, this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent.").  However, while the application of AFA to a non-cooperating government "may adversely impact a cooperating party, [] Commerce should seek to avoid such impact if relevant information exists elsewhere on the record."  *Archer Daniels Midland Co. v. United States*, 37 CIT 760, 769, 917 F. Supp. 2d 1331, 1342 (2013); *see also Guizhou Tyre Co. v. United States* ("*Guizhou I*"), 42 CIT __, __, 348 F. Supp. 3d 1261, 1270 (2018) ("To apply AFA in circumstances where relevant information exists elsewhere on the record — that is, solely to deter non-cooperation or 'simply to punish' — would make the agency's determination based on an incomplete (and[,] therefore, inaccurate) account of the record; that is a fate this court should sidestep.") (citation omitted).

"Commerce can apply [AFA] only when it has first made a supported finding under [section] 1677e(a) that information is missing from the record for an enumerated reason, followed by a separate finding under [section] 1677e(b) that there has been a failure to cooperate."  *Guizhou I*, 42 CIT at __, 348 F. Supp. 3d at 1270.  In the context of EBCP cases,

> the Court has determined that to apply an adverse inference to find that a cooperating party benefitted from the EBCP based on the GOC's failure to cooperate, "Commerce must: (1) define the gap in the record by explaining exactly what information is missing from the record necessary to verify non-use; (2) establish how the withheld information creates this gap by explaining why the information the GOC refused to give was necessary to verify claims of non-use; and (3) show that only the withheld information can fill the gap by explaining why other information, on the record or accessible by respondents, is insufficient or impossible to verify."

*Guizhou Tyre Co. v. United States* ("*Guizhou VI*"), 45 CIT __, __, 523 F. Supp. 3d 1312,

1361 (2021) (quoting *Jiangsu Zhongji Lamination Materials Co. v. United States*, 43 CIT

__, __, 405 F. Supp. 3d 1317, 1333 (2019)).[4]

    **B.    Analysis**

       The court concludes that Commerce: (1) identified the gap in the record created

by the failure of the GOC to provide requested information in regard to key aspects of

the functioning of the EBCP; (2) explained reasonably the reason that the missing

information pertaining to loan disbursement and partner/correspondent banks was

critical to verifying claims of non-use, but failed to explain the reason that the missing

information pertaining to the loan threshold was critical to verification; and (3) failed to

articulate an explanation as to the reason that Commerce could not verify information

on the record from Cooper Tire.  As such, the court remands this Final Determination to

Commerce to take the actions as set forth *infra*, Section I.B.3.

        **1.    Whether Commerce identified the missing information from
            the record**

       Commerce must "define the gap in the record" and "explain[] exactly what

information is missing from the record [that is] necessary to verify non-use." *Guizhou*

---

[4] *Guizhou Tyre Co. v. United States* ("*Guizhou VI*"), 45 CIT __, 523 F. Supp. 3d 1312 (2021), pertains to a different proceeding than those proceedings in other cases before this Court involving Guizhou Tyre Co, *see, e.g.*, *Guizhou Tyre Co. v. United States* ("*Guizhou I*"), 42 CIT __, 348 F. Supp. 3d 1261 (2018); *Guizhou Tyre Co. v. United States* ("*Guizhou II*"), 43 CIT __, 399 F. Supp. 3d 1346 (2019); *Guizhou Tyre Co. v. United States* ("*Guizhou III*"), 43 CIT __, 415 F. Supp. 3d 1402 (2019); *Guizhou Tyre Co. v. United States* ("*Guizhou IV*"), 43 CIT __, 389 F. Supp. 3d 1315 (2019); *Guizhou Tyre Co. v. United States* ("*Guizhou V*"), 43 CIT __, 415 F. Supp. 3d 1335 (2019).

*VI*, 45 CIT at __, 523 F. Supp. 3d at 1361 (quoting *Jiangsu Zhongji Lamination Materials*

*Co.*, 43 CIT at __, 405 F. Supp. 3d at 1333).  In the instant case, Commerce stated

clearly that there were two sets of information related to the 2013 revisions missing from

the record: (1) whether "the [China Export-Import] Bank employs threshold criteria, such

as a minimum USD 2 million contract value" and (2) whether loans are disbursed under

the program through partner/correspondent banks and, if so, the identities for those

banks.  IDM at 19.  Commerce explained that it needs this information to conduct its

investigation of the EBCP and to determine whether loans were provided under the

program because there is record information indicating that: (1) "the elimination of the

USD 2 million threshold is one of the changes effected by the 2013 Revisions," *id.* at 19

n.69 (citing SQR at 7-8); and (2) "the credits and funds associated with the program are

not limited to direct disbursements from the [China Export-Import] Bank."  *Id.* at 19.

Commerce asked the GOC for the 2013 revisions and a list of the

partner/correspondent banks in the Supplemental Questionnaire issued June 24, 2019,

but the GOC refused to provide Commerce with the information.  *See* SQR at 9, 13.

     With regard to the USD 2 million threshold, the GOC asserted in its initial

questionnaire response that the threshold "has been strictly implemented in practice."

GOC Initial Questionnaire Resp. at 130.  However, Commerce explained that this

undocumented assertion conflicted with other record information: "[A]s noted in [the

United Steel Worker's] Comments . . . (May 2, 2019) at Exhibit 7, according to officials

from the [China Export-Import Bank], the Administrative Measures relating to this

program were revised in 2013.  This revision eliminated the [USD] 2 million minimum

business contract [requirement]."  GOC Suppl. Questionnaire at 2.  Commerce,

therefore, requested in the Supplemental Questionnaire that the GOC clarify the

discrepancy and provide a copy of the "[i]nternal guidelines relating to this program that

were revised in 2013."  *Id.*

      The GOC responded that the "2013 guidelines are internal to the bank, not

public, and not available for release."  SQR at 9.  The GOC maintained further that it

"has no authority or right to force the [China Export-Import] Bank to provide a copy of

the 2013 [revisions], and therefore is unable to provide a copy to [Commerce]."  *Id.*

Rather than providing documentation on the 2013 revisions, the GOC provided a copy

of the 2000 Administrative Measures and asserted that the 2000 Administrative

Measures "continue to be valid and in force."  *Id.* at 8.  Still, the GOC failed to provide

any context or explanation in relation to the 2013 revisions.  *See generally* SQR at 6-13.

      In regard to the EBCP's use of partner/correspondent banks, Commerce

explained in its Supplemental Questionnaire on June 24, 2019, that the EBCP "[2010]

Implementing Rules . . . appear to indicate that the borrower is a bank . . . [and] that the

credit extended by the China [Export-Import] Bank to the importer is made through a

third-party financial institution, rather than from [the] China [Export-Import] Bank directly

to the importer."  GOC Suppl. Questionnaire at 3.  Commerce therefore asked the GOC

to provide more information regarding the involvement and identities of the

partner/correspondent banks.  *See id.* at 2-3.  In particular, Commerce requested that

the GOC "provide a list of all partner banks/correspondent banks involved in the

disbursement/settlement of export buyer's credits."  *Id.* at 3.  The GOC declined to

provide that list and asserted, without any documentation or other substantiation, that the question was not applicable because (1) neither of the respondent companies had used the EBCP and (2) the "GOC has no authority or right to force the [China Export-Import] Bank to reveal details of other transactions."  SQR at 13.

Commerce determined that since the GOC did not provide the requested documents, Commerce was unable to "properly examine [the GOC's] claims of non-use."  IDM at 20.  Specifically, Commerce found that

> information concerning the administration and operation of the [EBCP], such as how exactly loans are disbursed under the program (*e.g.*, the 2013 Revisions), . . . or whether the [China Export-Import] Bank employs threshold criteria, such as a minimum USD 2 million contract value[,] . . . is critical to understanding how the [EBCP] operates, and thereby is also critical to Commerce's ability to verify and determine usage of this program.

*Id*. at 19.

In sum, Commerce identified specifically that information was missing from the record on the threshold requirement and the involvement and identities of partner/correspondent banks.  IDM at 19.  Commerce asked the GOC for this information in its supplemental questionnaire.  GOC Suppl. Questionnaire at 2-3.  The GOC refused to provide the requested information to Commerce.  *See* SQR at 6-13.  Commerce identified sufficiently the gap in the record.

The court notes that in its initial questionnaire response, the GOC provided screenshots, an action that plaintiffs characterize as "evolving cooperation," Oral Argument Tr. at 43:23, to demonstrate to Commerce the steps it took to determine that respondents' customers did not use the EBCP, GOC Questionnaire Resp.  The

screenshots purported to show (1) the results of search queries, (2) run in the China

Export-Import Bank system, and (3) using the customer lists of Cooper Tire and

Longyue.  GOC Questionnaire Resp. at 129-130. The GOC maintained that

> [t]hese screenshots show that no [credit under EBCP] was provided to
> [Cooper Tire], Longyue or their U.S. customer [sic] during [sic] POR,
> irrespective [sic] the value of the contract (i.e., whether it exceeded USD 2
> million or not).  Moreover, these results also show that no disbursement
> was made through a correspondent or partner bank.

*Id*. at 130.  The GOC also asserted that, apart from the screenshots, the exporter was

"in a position to verify and confirm the existence, if any, of sales contracts that were

supported by the buyer's export credits or the [China] Ex[port]-Im[port] Bank."  *Id.*

In a follow up to the GOC's initial questionnaire response, Commerce issued a

supplemental questionnaire to the GOC.  GOC Suppl. Questionnaire.  In the

questionnaire, Commerce requested that the GOC provide: (1) any documents

pertaining to the alleged 2013 EBCP revisions, including those related to the potential

elimination of the USD 2 million threshold loan requirement; and (2) a list of

partner/correspondent banks involved in the administration of the EBCP.  *Id.* at 2-3.  As

detailed above, the GOC declined to provide information on the 2013 revisions and the

partner/correspondent banks, stating respectively that the 2013 guidelines were

"internal to the bank, not public, and not available for release" and that the GOC lacked

the "authority or right to force the [China Export-Import] Bank to reveal details of other

transactions . . . ."  SQR at 9, 13.

Commerce has an obligation to notify a party of a deficiency and to provide the

party, when practicable, "an opportunity to remedy or explain the deficiency," before

applying AFA.  19 U.S.C. § 1677m(d).  "Commerce may provide this notice and the

opportunity to remedy deficiencies through issuance of a supplemental questionnaire."

*Qingdao Sea-Line Int'l Trading Co. v. United States*, 45 CIT __, __, 503 F. Supp. 3d

1355, 1361 (2021).

  Plaintiffs maintain that "[t]he GOC fully responded to Commerce's request . . . [in]

its initial questionnaire response," which included the screenshots.  Pls. Br. at 5.

However, Commerce notified the GOC of the deficiencies in its initial questionnaire

response through the issuance of its supplemental questionnaire, which requested

information on the alleged 2013 EBCP revisions and on partner/correspondent banks,

as described above.  GOC Suppl. Questionnaire at 2-3.

  Further, this Court has determined previously that screenshots of the China

Export-Import Bank system are not an adequate substitute for access to the Bank's

system for purposes of verification.  *See RZBC Grp. Shareholding Co. v. United States*,

Slip Op. 16-64, 2016 WL 3880773, at *4 (CIT June 30, 2016) (holding that "screenshots

are incommensurate with database access" because screenshots can be fabricated

whereas database access is interactive and would allow Commerce to "request its own

queries in real time, [which would make] mucking with the results . . . much more

difficult").

  In its IDM in the proceeding below, Commerce referred to its *Citric Acid 2012*

Issues and Decision Memorandum, which was at issue in this Court's decision in

*RZBC*.[5]  IDM at 17.  In the *RZBC* administrative proceeding, the GOC denied

Commerce access to the EBCP database during verification in China, despite

Commerce notifying the GOC that it "would seek on-site access to the [China Export-

Import] Bank's database to confirm that none of RZBC's buyers were listed as

beneficiaries of the [EBCP]."  *RZBC Grp. Shareholding Co.*, 2016 WL 3880773, at *3.

Rather than provide Commerce access to the database, the GOC in *RZBC* offered

Commerce screenshots of the results of a database query run by the GOC, which

Commerce declined to review, reasoning that "without real-time database access,

Commerce could not sufficiently 'test and confirm' RZBC and the GOC's purported non-

use."  *Id*. (citing *Citric Acid and Certain Citrate Salts: Final Results of Countervailing*

*Duty Administrative Review; 2012*, 79 Fed. Reg. 78,799 (Dep't of Commerce Dec. 31,

2014) and accompanying Issues and Decision Memorandum at 74).

        As noted, in the instant case, the GOC provided screenshots in response to

Commerce's initial questionnaire.  Commerce then issued a supplemental questionnaire

to the GOC requesting (1) any documents pertaining to the alleged 2013 EBCP

revisions, including those related to the potential elimination of the USD 2 million

threshold loan requirement, and (2) a list of partner/correspondent banks involved in the

---

[5] Commerce quoted from *Citric Acid 2012* Issues and Decision Memorandum at
Comment 6.  IDM at 17 n.55 ("[W]e find that the GOC's refusal to allow the verifiers to
examine the [China Export-Import] Bank database containing the list of foreign buyers
that were provided assistance under the program during the POR precluded
[Commerce] from verifying the non-use claims made by the RZBC Companies and the
GOC." (quoting *Citric Acid and Certain Citrate Salts: Final Results of Countervailing
Duty Administrative Review; 2012*, 79 Fed. Reg. 78,799 (Dep't of Commerce Dec. 31,
2014) and accompanying Issues and Decision Memorandum at Comment 6)).

administration of the EBCP.  GOC Suppl. Questionnaire at 2-3.  The screenshots

supplied by the GOC in its initial questionnaire response are not a substitute for the

missing information on the record identified by Commerce with regard to the threshold

requirement and the involvement and identities of partner/correspondent banks.

### 2.  Whether Commerce explained the reason that the withheld information was necessary to verify non-use

The court turns to examining whether Commerce provided a reasonable

explanation as to the reason that the missing information on the threshold criteria and

the involvement of the partner/correspondent banks was necessary to verify non-use of

the program.

Commerce found that without the information on (1) threshold criteria and (2) the

identities of the partner/correspondent banks, Commerce was unable to verify the non-

use information on the record.  Specifically, Commerce stated that it

> is unable to verify in a meaningful manner the little information on the
> record indicating non-usage (*e.g.*, the claims of the GOC and emails and
> certifications from U.S. customers), with the exporters, U.S. customers, or
> at the [China Export-Import] Bank itself given the refusal of the GOC to
> provide the 2013 Revisions and complete list of [partner/correspondent]
> banks.[6]

IDM at 20.  Defendant further asserted that

> even if Commerce were required to attempt an extremely burdensome
> verification undertaking, Commerce explained that it would be

---

[6] There are no certifications from U.S. customers on the record in this case.  *See
generally* Response in Opposition to RZBC's Motion for Judgment on the Agency
Record at 29, *RZBC Grp. Shareholding Co. v. United States* (No. 15-00022), Slip Op.
16-64, 2016 WL 3880773 (CIT June 30, 2016), ECF No. 37 (asserting that "[t]he GOC
and RZBC provided no [] record evidence [of statements or certifications from RZBC's
U.S. customers] in th[e] case").

> "meaningless" because it would "have no idea as to what documents it
> should look for, or what other indicia there might be within a company's
> loan documentation regarding the involvement of the China Ex-Im Bank."

Def.'s Resp. to Pl.'s Mot. for J. upon Agency R. ("Def. Br.") at 14 (quoting IDM at 20),

ECF No. 44.

Commerce identified these two categories of information as essential for

verification; however, Commerce explained adequately only the reason that information

on partner/correspondent banks prohibited Commerce from verifying the non-use

information on the record.  Commerce did not explain sufficiently the reason that the

missing information on the threshold criteria prevented Commerce from verifying the

non-use information on the record.

In relation to the threshold information, Commerce stated in its IDM that

information, such as whether there is a minimum USD 2 million contract value, is

"critical to understanding how the [EBCP] operates, and[,] thereby[,] is also critical to

Commerce's ability to verify and determine usage of this program."  IDM at 19.

Commerce stated also that "[t]he record indicates that the elimination of the USD 2

million threshold is one of the changes effected by the 2013 Revisions."  IDM at 19 n.69

(citing SQR at 7-8).  However, Commerce did not state the *reason* that the information

on the threshold is "critical" to verification.

At oral argument, defendant stated what may amount to a compelling reason —

provided that it is buttressed and carefully and fully elucidated — that the threshold

information was required for Commerce to conduct verification.  Defendant stated that

"[t]he [USD 2] million threshold criteria [sic] is important to Commerce's ability to verify

non-usage . . . because it helps Commerce narrow the universe of information down."
Oral Argument Tr. at 16:11-14.  Defendant explained further that without this narrowing
criterion "it's not feasible" for Commerce to audit the companies' records "given the
constraints on [Commerce's] resources" and the fact that "the universe of documents is
enormous."  *Id.* at 16:20, 16:24, 17:1.

     The Court has found that Commerce's limited resources may constitute a
legitimate constraint to verification.  *See Torrington Co. v. United States*, 68 F.3d 1347,
1351 (Fed. Cir. 1995) ("Under the subjective 'good cause' standard, [Commerce] is
entitled to weigh the need for verification in a particular case against the burden that
verification would impose on agency resources.").  Similarly, in *Guizhou VI*, the court
reiterated that "[a]lthough Commerce appears to have the authority to verify a [third
party's] response as accurate . . . the verification process generally entails a significant
burden on Commerce and the responder may choose not to allow verification."
*Guizhou VI*, 45 CIT at __, 523 F. Supp. 3d at 1369-1370 (alterations in original) (quoting
*CS Wind Vietnam Co. v. United States*, 41 CIT __, __, 219 F. Supp. 3d 1273, 1284
(2017)).

     However, a post-hoc explanation by defendant at oral argument cannot cure the
lack of explanation by Commerce in the IDM.  *See Motor Vehicle Mfrs. Ass'n v. State
Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 50 (1983) ("It is well-established that an
agency's action must be upheld, if at all, on the basis articulated by the agency itself."
(citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962); SEC *v.
Chenery Corp.,* 332 U.S. 194, 196 (1947); *Am. Textile Mfrs. Inst., Inc. v. Donovan,* 452

U.S. 490, 539 (1981))).  As such, the court is unable to assess whether Commerce's determination that information on the threshold was required for verification and determining non-use, was reasonable.

Regarding the second category of information, Commerce explained sufficiently the reason that the missing information on partner/correspondent banks was required for verification of non-use.  Commerce emphasized that there was information on the record that showed that credits and funds pertaining to the EBCP were "not limited to direct disbursements from the [China Export-Import] Bank" and "that customers can open loan accounts for disbursements through other banks."  IDM at 19.  Commerce then detailed the reasons that it required the information on partner/correspondent banks to conduct verification, explaining that:

> Commerce cannot verify claims of non-usage . . . if it does not know the names of the intermediary banks that might appear in the books and records of the recipient of the credit (*i.e.*, the loan) or the cash disbursement made pursuant to the credit.  Given the participation of partner/correspondent banks, for which the GOC refused identifying information, even where there is no account in the name "Ex-Im Bank" in the books and records (*e.g.*, subledger, tax return, bank statements) of either the exporter or the U.S. customer, Commerce could not confirm that no loans were provided under the program.

IDM at 19.  Commerce was, therefore, explicit — without the names of the partner/correspondent banks, Commerce determined that its verification process would be futile because it would not be able to confirm non-use, even if the books and records made no mention of the China Export-Import Bank.

Plaintiffs argue that neither the 2013 revisions nor the names of possible partner/correspondent banks are needed to determine usage.  Pls. Br. at 25-28.

Plaintiffs assert that the USD 2 million threshold is irrelevant to whether Commerce may

determine usage because Commerce "has never explored this threshold in the

countless on-site verifications it has conducted at the China [Export-Import] Bank as a

means to determine non-use."  *Id.* at 25-26.  With regard to partner/correspondent

banks, plaintiffs argue that Commerce failed to link the information requested with the

conclusion that Commerce cannot determine or verify use because, "regardless of

whether . . . the program could be disbursed through [a partner/correspondent bank],

usage could still be determined through [the] China [Export-Import] Bank's system in

China."  *Id.* at 27.  Finally, plaintiffs point to comments by the GOC that Commerce

could use information from the mandatory respondents to verify whether the purchasers

used the EBCP.  *Id.* at 6.

   The court is unpersuaded by plaintiffs' arguments.  The question before the court

is whether Commerce's explanation is reasonable.  *See Shandong Huarong Gen. Corp.

v. United States*, 25 CIT 834, 837, 159 F. Supp. 2d 714, 718 (2001) (stating that the

court should uphold the agency determination as long as "its factual findings are

reasonable and supported by the record as a whole") (citations omitted), *aff'd sub nom.

Shandong Huarong Gen. Grp. Corp. v. United States*, 60 F. App'x 797 (Fed. Cir. 2003).

Commerce is not precluded from using threshold criteria as a method of narrowing the

scope of contracts.[7]  "It is within the discretion of Commerce to determine how to verify

---

[7] In fact, this Court remanded to Commerce in *RZBC* because Commerce did not verify
or explain the reason that it could not verify non-use by using information on threshold
(footnote continued)

[], and due deference will be given to the expertise of the agency." *Carlisle Tire &*

*Rubber Co., Div. of Carlisle Corp. v. United States*, 9 CIT 520, 532, 622 F. Supp. 1071,

1082 (1985).

In addition, plaintiffs' suggestion that Commerce could have verified the

information through the China Export-Import Bank's system is unpersuasive.

Commerce has been denied access repeatedly to the China Export-Import Bank.  IDM

at 20 n.71 ("Commerce also notes the GOC has a history of refusing to provide

Commerce with adequate access to its books and records relevant to understanding

this program.").[8]  In fact, the GOC again in this case stated that "[t]he GOC has no

---

criteria.  *RZBC Grp. Shareholding Co.*, 2016 WL 3880773, at *6.  Following the remand, this Court held that Commerce's application of AFA was "supported by substantial evidence and [] consistent with both the law and this court's remand order."  *RZBC Group Shareholding Co. v. United States*, 41 CIT __, __, 222 F. Supp. 3d 1196, 1201 (2017).  Based on the wording of the translation of the 2000 Administrative Measures that was on the record regarding the threshold, the Court held that the "[USD] 2 million threshold is ambiguous, and for that reason Commerce cannot ensure non-use of the [EBCP] simply by examining the value of RZBC's contracts."  *Id.*

[8] This Court has recognized previously this repeated denial of access:

> Commerce has previously attempted — on multiple occasions — to verify respondents' claims of non-use by traveling to China to review the China Export-Import Bank records; however, the GOC has repeatedly denied Commerce access in not one but three separate respects: (1) by not allowing Commerce to go to the China Export-Import Bank, *see RZBC Grp. Shareholding Co. v. United States*, Slip Op. 16-64, 2016 WL 3880773 (CIT June 30, 2016); (2) by asserting that Commerce did not have the "proper authorization" to review the records, *id.*, *see also Changzhou I*, 195 F. Supp. 3d at 1354; and, (3) by asserting that the information explicitly sought by Commerce is "internal to the bank, non-public, and not

(footnote continued)

authority or right to force the [China Export-Import] Bank to provide a copy of the 2013 guidelines, and therefore is unable to provide a copy to [Commerce]."  SQR at 9.  In addition, the GOC's claim, repeated by plaintiffs, that Commerce is "in a position to verify and confirm the existence, if any, of sales contracts that were supported by" the EBCP or the China Export-Import Bank also is not supported.  GOC Questionnaire Resp. at 130; Pl. Br. at 6; *see RZBC Group Shareholding Co. v. United States*, 41 CIT __, __, 222 F. Supp. 3d 1196, 1201 (2017).[9]

The Federal Circuit has stated that "Commerce must explain the basis for its decisions . . . [and that] the path of Commerce's decision must be reasonably discernable to a reviewing court."  *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009).  The court is able to understand from the explanation that Commerce provided the reason that Commerce is unable to verify the non-use information on the record without the missing information on partner/correspondent banks.  The same cannot be said for the missing information on the threshold criteria. The court remands to Commerce to explain the reason that the information withheld by the GOC about the threshold requirement was necessary to verify non-use by

---

available for release."  GOC Second Supplemental Questionnaire Response at 2, PD 392 (Sept. 26, 2016).  Accordingly, the court is not persuaded that Commerce should expend additional resources to follow this method of verification . . . .

*Guizhou VI*, 45 CIT at __, 523 F. Supp. 3d at 1373-1374.

[9] *See supra* note 7.

describing how the missing information prevents Commerce from taking the steps that it

considers necessary to verify non-use.

### 3. Whether Commerce explained the reason that information on the record was insufficient or impossible to verify

Finally, the court will examine whether Commerce explained the reason that the

information on the record from Cooper Tire is unverifiable and whether Commerce's

finding is supported by substantial evidence.  The court determines that Commerce did

not explain the reason that Cooper Tire's questionnaire responses were unverifiable.

Because Commerce did not address in its IDM whether Cooper Tire's questionnaire

responses were sufficient, the court cannot look to whether the determination by

Commerce was reasonable.  The court remands to Commerce to take the actions as

set forth below.

Plaintiffs argue that there is substantial evidence on the record that neither the

mandatory respondents nor their U.S. customers used the EBCP.  Pls. Br. at 24.

Plaintiffs argue that the record includes the

> certified responses of [Cooper Tire] and Longyue that: (1) neither they nor
> any of their customers used the EBCP; and (2) they did not assist their
> customers in any way to obtain any export buyer's credits under the
> EBCP.  [And that the] evidence also includes the GOC's repeated
> corroboration that neither [Cooper Tire] nor Longyue, nor any of their
> customers, used the EBCP.

*Id*. (internal citations omitted).

Defendant argues to the contrary that "the record contains only scant information

provided in the questionnaire responses relating to usage of the program."  Def. Br. at

19.

Consol. Court No. 20-00113                                                    Page 29

The information in the record provided by Cooper Tire pertaining to non-use is as follows.  Cooper Tire stated in its questionnaire response that it "did not apply for, use, or benefit from [the EBCP] during the POR, and did not have any outstanding financing under this program."  Cooper Tire Questionnaire Resp. at III-32.  Commerce asked Cooper Tire to (1) discuss the role it played in assisting customers to obtain buyer credits and (2) provide to Commerce any documentation that it provided to the China Export-Import Bank in assisting customers to obtain buyer credits.  *Id.* at III-31-III-32.  Cooper Tire responded that it

> [was] not aware that any of its customers applied for, used or benefited from this alleged program during the POR, and [Cooper Tire] did not provide any assistance to its customers for receiving the export buyer's credit.  [Cooper Tire] did not perform any acts that in any way would permit these customers to receive any export buyer credits on its sales to these customers.

*Id.* at III-32.[10]

---

[10] Similarly, the record showed that Longyue responded to the questionnaire by stating that it: emailed its customers to "determine whether [they] used [the EBCP]"; denied "ever be[ing] contacted by the [China Export-Import] Bank or other [state-owned commercial banks] or their export customers to assist in obtaining buyer credits under [the EBCP],"_which assistance Longyue asserts is a prerequisite for receipt of benefits under the EBCP; and "did not purchase export credit insurance," which Longyue also claims is necessary under Article I.(4).1 of the *Detailed Implementation Rules Governing Export Buyers' Credit of the Export-Import Bank of China* ("Detailed Implementation Rules").  Longyue Questionnaire Resp. at 25 (citing *id.*, Ex. 25, CR 69, PR 98).  Accordingly, Article I.(4).1 of the Detailed Implementation Rules states: "In order to utilize export buyers' credit, the exporter must purchase export credit insurance with the beneficiary being the [China] Export-Import Bank . . . .  The acquisition of the insurance intent declaration is a prerequisite for the export buyers' credit application."  *Id.*, Ex. 25, CR 69, PR 98.

Commerce also asked Cooper Tire to "explain in detail the steps you took to determine that no customer used the Buyer Credit Facility" in the event that Cooper Tire claimed that none of its customers used buyer credits during the POR.  *Id*.  Cooper Tire responded that it "was never contacted by any of its customers to provide any information required to obtain an export buyer's credit from any Buyer Credit Facility. Accordingly, [Cooper Tire] believes that it is impossible that any of its customers could have possibly received export buyer's credit."  *Id*.

Commerce found that "[t]he GOC is the only party that can answer questions about the internal administration of th[e] program . . . ."  IDM at 20.

The Federal Circuit has made clear that "the burden of creating an adequate record lies with interested parties and not with Commerce."  *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337-1338 (Fed. Cir. 2016) (quoting *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)).  Further, the Federal Circuit has stated that "[t]he purpose of verification is to verify the accuracy of information already on the record, not to continue the information-gathering stage of the Department's investigation . . . ."  *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 39 CIT __, __, 61 F. Supp. 3d 1306, 1349 (2015), *aff'd sub nom. Maverick Tube Corp. v. United States*, 857 F.3d 1353 (Fed. Cir. 2017) (internal citations omitted).

However, "[w]hen Commerce has access to information on the record to fill in the gaps created by the lack of cooperation by the government, as opposed to [a private respondent] . . .  it is expected to consider such evidence."  *RZBC*, 2016 WL 3880773, at *2 (quoting *GPX Int'l Tire Corp. v. United States*, 37 CIT 19, 58-59, 893 F. Supp. 2d

1296, 1332 (2013), *aff'd*, 780 F.3d 1136 (Fed. Cir. 2015)).  Commerce's standard

approach for cooperating non-government respondents in CVD reviews has been "to

analyze the responses provided by a company respondent to determine if the

respondent's information is sufficient to establish as a factual matter non-use of a

program without government cooperation." *Guizhou VI*, 45 CIT at __, 523 F. Supp. 3d

at 1367 (citing *Certain In-shell Roasted Pistachios from the Islamic Republic of Iran*, 73

Fed. Reg. 9,993 (Dep't of Commerce Feb. 25, 2008) (final results CVD new shipper

review) and accompanying Issues and Decision Memorandum at Comment 2; *Certain

In-shell Roasted Pistachios from the Islamic Republic of Iran*, 71 Fed. Reg. 27,682

(Dep't of Commerce May 12, 2006) (final results CVD admin. review) and

accompanying Issues and Decision Memorandum at Comment 2).[11]

      In the instant case, Commerce did not analyze on the record the responses

provided by Cooper Tire to determine if the information was sufficient to establish non-

use of the EBCP given the lack of cooperation of the GOC.

      In their briefs, plaintiffs cite to 19 C.F.R. § 351.303(g)(1)(i) and (g)(1)(ii), which

requires that the presenter of factual information from a company or government certify

that the submission to Commerce is accurate and complete to the best of their

knowledge.  19 C.F.R. § 351.303(g)(1)(i)-(ii); Pls. Br. at 5, 8 (quoting §

351.303(g)(1)(ii)), 7 (quoting § 351.303(g)(1)(i)); Pls. Reply Br. at 6 (citing §

---

[11] *See supra* note 4.

351.303(g)(1)(i)).  Cooper Tire certified its responses to be "accurate and complete."
*See* Cooper Tire Questionnaire Resp.

This Court recognizes the legitimacy of statements made under penalty of
perjury.  *See RZBC*, 2016 WL 3880773, at *4 (remanding to Commerce because
Commerce should have verified or "explained why it could not verify [] non-use [] by
checking the firm's audited financial statements or other books and records for the value
of RZBC's sales contracts" when "the record indicates that the Buyer's Credit program is
available only with respect to sales contracts valued over [USD] 2 million dollars, and
RZBC swore under penalty of perjury that it had no such contracts").

The recent EBCP cases have involved affidavits or declarations from the
respondents' U.S. customers.  *See, e.g.*, *Guizhou Tyre Co. v. United States* ("*Guizhou
II*"), 43 CIT __, 399 F. Supp. 3d 1346, 1351-1352 (2019); *Jiangsu Zhongji Lamination
Materials Co. v. United States*, 43 CIT __, __, 405 F. Supp. 3d 1317, 1331 (2019).  This
court has previously remanded a determination by Commerce involving AFA due to its
failure to "explain[] how or why the [2013 EBCP] rule change affected the way
[Commerce] *conducts verification of non-use declarations*" or to "address why this
challenge is insurmountable."  *Guizhou II*, 43 CIT at __, 399 F. Supp. 3d at 1351.
Moreover, this court has also found that Commerce needed to provide a detailed
explanation for its determination that the customer affidavits were unverifiable "by
carefully connecting the dots between each conclusion made and Commerce's
underlying reasoning for its findings."  *Guizhou VI*, 45 CIT at __, 523 F. Supp. 3d at
1377.  In this case, customer affidavits were not provided.  However, Commerce needs

to provide a sufficient explanation as to the reason that Cooper Tire's responses are unverifiable.

In conclusion, the court remands this Final Determination to Commerce to: (1) explain the reason that the information withheld by the GOC about the threshold requirement and the 2013 revisions was necessary to verify non-use by describing how the missing information prevented Commerce from taking the steps that it considered necessary to verify non-use; (2)(a) explain the reason that the questionnaire statements by Cooper Tire of non-use by its customers are "unverifiable" by describing step-by-step Commerce's methodology for verifying non-use; (b) describe the extent to which the record would enable Commerce to understand the precise role that the mandatory respondents would play in permitting customers to participate in the EBCP; (c) describe the information that Commerce would need from the mandatory respondents and/or the customers to determine whether either the mandatory respondents or their customers used the EBCP; (3) explain the sources that Commerce would need to look at to complete the process of verification, including any correspondence or communications of any nature (e.g., emails, letters, faxes, telephone calls, text messages) between the mandatory respondents or their customers and the GOC, the China Export-Import Bank and partner/correspondent banks; (4) explain whether it would be feasible — and, if not, why not — for Commerce to solicit and obtain the withheld information about the threshold requirement from the mandatory respondents or their customers; (5) if Commerce were to consider that obtaining and conducting a review of the sources of information identified in "(3)", above, were unduly burdensome, explain with particularity

the reasons for this conclusion; and (6) explain the extent to which Commerce would be

able to rely on information from mandatory respondents by explaining how, if at all, such

information would be relevant and reliable for Commerce to establish non-use.  The

court emphasizes that each of the aforementioned instructions for Commerce on

remand is a distinct inquiry that requires a distinct individual response as well as

clarification from Commerce in its redetermination.

II.     **Count II: Waiver**

The court will not consider Count II in plaintiffs' complaint because: (1) plaintiffs

waived and abandoned Count II when they failed to include Count II arguments in the

motion for judgment upon the agency record; and (2) Count II is impermissibly vague.

      **A.     Legal framework**

USCIT Rule 56.2(c)(1) provides that a party moving for judgment upon the

agency record must state in its brief "the issues of law presented together with the

reasons for contesting or supporting the administrative decision."  USCIT R. 56.2(c)(1).

A party that fails to raise the issues of law accompanied by its arguments waives the

right to assert those claims.  *De Laval Separator Co. v. United States*, 1 CIT 144, 146,

511 F. Supp. 810, 812 (1981) ("It is axiomatic that any claim which is not pressed is

deemed abandoned.").

In addition, USCIT Rule 8(a)(2) requires that a claim for relief contain a "short

and plain statement of the claim showing that the pleader is entitled to relief."  USCIT R.

8(a)(2).  USCIT Rule 8(a)(2) is identical to Federal Rule of Civil Procedure 8(a)(2).

USCIT R. 8(a)(2); Fed. R. Civ. P. 8(a)(2).  Interpretations of Federal Rule of Civil

Procedure 8(a)(2) are, therefore, applicable.  *Husteel Co. v. United States*, 43 CIT __,

__, 375 F. Supp. 3d 1317, 1321 n.3 (2019).  A claim must offer more than "labels and

conclusions" or a "formulaic recitation of the elements of a cause of action . . . ."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007)).  The pleadings must also "give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

      **B.**    **Positions of the parties**

      Plaintiffs' Count II alleges that, "[u]pon information and belief, Commerce erred in

other aspects of its *Final [Determination]* . . . that will be evident upon review of the

administrative record in this case.  These additional errors by Commerce are arbitrary,

capricious, not supported by substantial evidence, and otherwise are not in accordance

with law."  Compl. at 4, ¶¶ 13-14, ECF No. 2.

      Defendant and defendant-intervenor both assert that the court should reject

plaintiffs' Count II.  Def. Br. at 2 n.2; Resp. Br. of United Steel, Paper and Forestry,

Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Union, AFL-CIO, CLC ("Def.-

Intervenor Br.") at 11, ECF No. 45.  Defendant contends that plaintiffs waived and

abandoned Count II because they provided arguments only in support of Count I within

the motion for judgment upon the agency record.  Def. Br. at 2 n.2.  Defendant-

intervenor asserts further that Count II is impermissibly vague because the count fails to

state a claim and fails to provide parties fair notice.  Def.-Intervenor Br. at 11-12.

Plaintiffs, in their reply brief, state that they are "not pursuing Count II of [the] Complaint,

other than to the extent the Court deems Count II necessary to support any part of their

argument challenging Commerce's application of AFA to the EBCP."  Pls.' and Pl.-

Intervenor's Reply Br. ("Pls. Reply. Br.") at 12 n.2, ECF No. 46.

      **C.    Analysis**

      The court will not consider plaintiffs' Count II because plaintiffs failed to include

arguments to support Count II in the motion for judgment upon the agency record, and

the count is impermissibly vague.  A plaintiff must raise arguments to support all counts

that it seeks to pursue in its motion for judgment upon the agency record.  USCIT R.

56.2(c)(1) (providing that briefs submitted upon a motion must include "issues of law

presented together with the reasons for contesting or supporting the administrative

determination").  Failure to raise arguments in support of a claim waives and abandons

that claim.  *Timken Co. v. United States*, 26 CIT 1072, 1073 n.2, 240 F. Supp. 2d 1228,

1231 n.2 (2002) (holding that failure to raise arguments to support claim constitutes

waiver of that claim).

      Plaintiffs contend in Count II that Commerce committed "additional errors,"

Compl. at 4, ¶ 14; however, plaintiffs do not offer arguments in support of Count II in

their brief.  Pls. Br. at 10-32 (discussing only Commerce's application of AFA to the

EBCP).  In addition, plaintiffs state in their reply brief that they are "not pursuing Count II

of [the] Complaint, other than to the extent the Court deems Count II necessary . . . ."

Pls. Reply Br. at 12 n.2.  Plaintiffs' expressed intent not to pursue Count II (unless the

court "deems [it] necessary") suggests further waiver and abandonment.  *See id.*

Therefore, plaintiffs' Count II is waived and abandoned because plaintiffs' fail to offer

argument in support of Count II and indicate that they are "not pursuing" the count.  *Id*.

Even if plaintiffs had raised arguments in support of Count II, however, the count

must be set aside for failure to state a claim under USCIT Rule 8.  "[A] claim for relief

must contain . . . a short and plain statement of the claim showing that the pleader is

entitled to relief."  USCIT R. 8(a)(2).  The "[f]actual allegations must be enough to raise

a right to relief above the speculative level."  *Sioux Honey Ass'n v. Hartford Fire Ins.

Co.*, 672 F.3d 1041, 1062 (Fed. Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

Plaintiffs contend in Count II that certain errors by Commerce "will be evident"

and that "[t]hese additional errors by Commerce are arbitrary, capricious, not supported

by substantial evidence, and otherwise are not in accordance with law."  Compl. at 4, ¶¶

13-14.  A complaint that alleges errors that "will become more apparent" fails to provide

parties "fair notice" of the scope of the claims and can prevent defendant from dealing

appropriately with the allegations.  *Husteel Co.*, 43 CIT at __, 375 F. Supp. 3d at 1321-

1322 (holding that plaintiff's complaint alleging "Commerce's determination may have

contained other errors of law and fact that will become more apparent after a full review

of the administrative record" failed to state a claim because it did not state a specific

error of law or fact and was "vague and open-ended").  Plaintiffs do not specify errors of

law or fact within Commerce's Final Determination that they seek to pursue.  Instead,

they state generally that "additional errors" will become evident.  Compl. at 4, ¶ 14.  As

in *Husteel*, Count II does not provide fair notice to defendants because it does not state

existing issues of law or fact, but rather states legal conclusions and future issues that might emerge.  For the foregoing reasons, the court will not consider plaintiff's Count II.

## CONCLUSION AND ORDER

In the 1995 film *Philadelphia*, attorney Joe Miller (played by Denzel Washington), says — tired and exasperated — to his prospective client, Andrew Beckett (portrayed by Tom Hanks) from behind an old, worn wooden desk: "Explain this to me like I'm a two-year-old."[12]

\* \* \*

While the court does not request that Commerce explain its decisions to the court like a two-year-old, the law requires that Commerce "explain the basis for its decisions" and that "the path of [its] decision must be reasonably discernable."  *NMB Sing. Ltd.*, 557 F.3d at 1319.  In light of these requirements, the court remands the Final Determination so that Commerce may: (1) explain the reason that the information withheld by the GOC about the threshold requirement and the 2013 revisions was necessary to verify non-use by describing how the missing information prevented Commerce from taking the steps that it considered necessary to verify non-use; (2)(a) explain the reason that the questionnaire statements by Cooper Tire of non-use by its customers are "unverifiable" by describing step-by-step Commerce's methodology for verifying non-use; (b) describe the extent to which the record would enable Commerce to understand the precise role that the mandatory respondents would play in permitting

---

[12] PHILADELPHIA (TriStar Pictures 1993).

customers to participate in the EBCP; (c) describe the information that Commerce

would need from the mandatory respondents and/or the customers to determine

whether either the mandatory respondents or their customers used the EBCP; (3)

explain the sources that Commerce would need to look at to complete the process of

verification, including any correspondence or communications of any nature (e.g.,

emails, letters, faxes, telephone calls, text messages) between the mandatory

respondents or their customers and the GOC, the China Export-Import Bank and

partner/correspondent banks; (4) explain whether it would be feasible — and, if not, why

not — for Commerce to solicit and obtain the withheld information about the threshold

requirement from the mandatory respondents or their customers; (5) if Commerce were

to consider that obtaining and conducting a review of the sources of information

identified in "(3)", above, were unduly burdensome, explain with particularity the reasons

for this conclusion; and (6) explain the extent to which Commerce would be able to rely

on information from mandatory respondents by explaining how, if at all, such information

would be relevant and reliable for Commerce to establish non-use.  Accordingly, the

court remands the Final Determination to Commerce.

Based on the foregoing reasons, it is hereby

**ORDERED** that on remand Commerce: (1) explain the reason that the

information withheld by the GOC about the threshold requirement and the 2013

revisions was necessary to verify non-use by describing how the missing information

prevented Commerce from taking the steps that it considered necessary to verify non-

use; (2)(a) explain the reason that the questionnaire statements by Cooper Tire of non-

use by its customers are "unverifiable" by describing step-by-step Commerce's

methodology for verifying non-use; (b) describe the extent to which the record would

enable Commerce to understand the precise role that the mandatory respondents would

play in permitting customers to participate in the EBCP; (c) describe the information that

Commerce would need from the mandatory respondents and/or the customers to

determine whether either the mandatory respondents or their customers used the

EBCP; (3) explain the sources that Commerce would need to look at to complete the

process of verification, including any correspondence or communications of any nature

(e.g., emails, letters, faxes, telephone calls, text messages) between the mandatory

respondents or their customers and the GOC, the China Export-Import Bank and

partner/correspondent banks; (4) explain whether it would be feasible — and, if not, why

not — for Commerce to solicit and obtain the withheld information about the threshold

requirement from the mandatory respondents or their customers; (5) if Commerce were

to consider that obtaining and conducting a review of the sources of information

identified in "(3)", above, were unduly burdensome, explain with particularity the reasons

for this conclusion; and (6) explain the extent to which Commerce would be able to rely

on information from mandatory respondents by explaining how, if at all, such information

would be relevant and reliable for Commerce to establish non-use.  The court

emphasizes that each of the aforementioned instructions for Commerce on remand is a

distinct inquiry that requires a distinct individual response as well as clarification from

Commerce in its redetermination; it is further

Consol. Court No. 20-00113                                    Page 41

     **ORDERED** that the remand results shall be due 90 days following the date of this Opinion and Order; it is further

     **ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.

 

 

                                            /s/      Timothy M. Reif
                                            Timothy M. Reif, Judge

Dated:  October 12, 2021
        New York, New York